Good morning, Your Honor. Shannon Clark from Gallagher and Kennedy, Phoenix, Arizona, on behalf of Plaintiff Appellate Doris Jones. And may it please the Court, I would like to endeavor to reserve approximately 30 minutes of my time for rebuttal. Keep track of your own time if you can. I'd be happy to, Your Honor. This case, as the Court is aware, involves an IVC filter that fractured and lodged one of its metal struts into Doris Jones's pulmonary artery. She brought a product liability case against Bard, arguing that the product was defective and unreasonably dangerous, and that Bard failed to adequately warn about those dangers. Under Georgia law, the jury was instructed that as part of its analysis of whether the filter was defective, it had to, quote, decide whether the manufacturer acted reasonably in choosing a particular design by considering all relevant evidence, close quote. That's the S.E.R. 17, which is Instruction 14. We're here today because the jury was not able to consider all relevant evidence. And your arguments, I take it, relate entirely to evidence about the recovery filter, not the Eclipse filter that was implanted. And specifically with respect to the recovery filter's propensity for fracture and cephaloid migration causing death. Right. So, my pulmonary question, how did you seek to introduce that evidence? Was it through the opinion of your expert? There were actually a number of ways, Your Honor. It was through expert opinions. There were documents, considerable testimony that had to be essentially redacted and basically revised, particularly from BARD witnesses. There were a number of witnesses where these questions were asked. And so, what we were trying to do is to help the jury understand when it's evaluating BARD's reasonableness in picking a particular design, what the context of its choice was. And the context of that choice was when they put the recovery filter on the market without doing adequate testing, adequate trials, things like that, without understanding the environment of use, that it immediately started having this problem. And so, rather than pulling the product off the market, figuring out what was going on, completing a root cause analysis and figuring out, hey, why is this happening? Counsel, I just need to be a little clearer about what it was that was excluded that you think should not have been excluded. I thought that the evidence excluded had to do with the previous design filter. Is that true or not true? That is true. And I also thought that what was excluded was evidence of deaths caused by cephalid migration. Is that true? That is also true. And that is not what your client experienced, correct? That is also true. Okay. So, we're looking at an evidentiary ruling, which we review for abusive discretion. So, why is that an abusive discretion when both the product and the cause of death of these other people was different than what happened to your client? So, first of all, you're correct on the standard of review. But the reason it's abusive discretion is that the scales were not properly balanced. The relevance was dramatically underweighted, whereas the potential... Why is that so if it's a different problem that is a migration which she did not experience and a different product which she also didn't have? So, why is that great relevance? It's great relevance, Your Honor, because it's how we got to the design of her product. Her product was designed as a reaction to the very quick design of the recovery filter When they started having these deaths, what BART did was immediately widen the product so it would fit better in the IVC filter, which led to... How is it any different if they had never had a previous product and they designed only this product that was identical to this exact product? What difference does that make? It's very different, Your Honor, because for the jury to understand the design of the product that harmed Doris Jones, it has to understand, per Georgia law and the jury instruction it was given, the reasonableness of the decision. And so, if it was a different case where we didn't have this background where it was a knee-jerk reaction without any new engineering, just kind of going on a theory that this might be a better fix for the problem, that's one thing, versus this product... Say the Eclipse filter was BART's first endeavor here and we didn't have any failures. It did years and years of testing. Let's be specific about what the judge allowed and didn't allow. Okay. Because the district court seems to have split the baby, if you will, in this case. The district court says, look, I'm going to let you put in evidence of complications, testing and design with respect to the recovery filter. What I'm not going to let you do is put in evidence that cephaloid migration caused deaths. But you can put in evidence that the recovery filter had complications, that it caused problems, that it was speedily redesigned to be the Eclipse filter. I'll let you put all that in. I just don't want you talking about deaths from migration of it because that was a different type of injury. And he says, it may be relevant, but under 403, I'm going to keep it out. And you did put in lots of evidence about the problems of the recovery filter. Given all those, why is this an abuse of discretion? It's an abuse of discretion, Your Honor, because at the outset, what the effect of that was is that we're not just talking about a minor exclusion of certain evidence or splitting the baby. The effect of that was, on this trial, was that it changed the evidence. We had to try to- Well, sure. Every ruling in limine changes the evidence. My question is, why was the, just as I read it, he simply said, I'm not going to let you put in evidence about specific deaths that occurred from migration of the recovery filter. In fact, you got in some because your doctor said one of the reasons he was worried about complications was somebody had died from it. But why is that? That's the specific ruling, that you can't put in evidence about deaths from cephaloid migration of the recovery filter, but you can put in lots of evidence about the deficiencies, the testing, and the redesign of the recovery filter. Why does that specific limitation amount to an abuse of discretion? Your Honor, you need to go look no further than Bard's closing argument to understand the impact that this had. Not only did it not allow the jury to understand the context of what was happening with Bard and the reasonableness of this design, it allowed Bard to essentially paint itself as a very responsible corporate citizen. This was just continuous quality improvement. In fact, if you look- Well, it was quality improvement. Your Honor, it was much more akin to Apple kind of having the latest generation of an iPhone versus a reaction to a device that was causing patient deaths. And again, if you look at the closing argument, transcript ER 2868, this is a case of continuous improvement, six generations of a revolutionary device over a 13 to 15-year period, and it was particularly problematic because, in closing argument, because it did not have to deal with the way in which it got to the G2, which is essentially the exact same product as the clip filter. Well, but see, that's why I'm focusing on migration. Your client suffered from fracture, not the migration of the device, and there's a lot of evidence in this record, and the judge was concerned about having a separate trial about whether this device, whether the migration problems with the original device had somehow been solved in the meantime so that evidence about deaths from migration really wasn't relevant to your issue. Well, it was relevant to our issue because that's how we got to this problem, is that now we have a new problem that was generated by the quick, hasty change from the recovery to the G2. But you did get to put in evidence, you agree, on the quick change. You weren't restricted at all about putting in evidence about the change and the deficient and the problems that the recovery product had. You just weren't allowed to say two people died from it. Your Honor, it was a double-digit death, but even besides that, the issue is reasonableness and what complications or difficulties, things like, words like that are very vague, and so what does that mean to a jury of eight people behind closed doors who are deliberating? Death is very specific. So for the jury to be able to evaluate the reasonableness of their conduct, it was important for them to understand what they were dealing with. A complication could, there was a lot of different evidence of complications. That could mean a two-millimeter migration, it could mean a fracture, it could mean embolization, there's a whole host of things that that could mean. Counsel, you're down to less than a minute if you wanted to save some rebuttal time. I do, Your Honor. Thank you for the reminder. Thank you. May it please the Court, James Martin for Bard. As the Court recognized, the Eclipse filter here was two generations removed from the recovery filter. The recovery was not even the predicate device to the Eclipse, and the Eclipse design didn't present any cephalid migration issues. There were no cephalid migration deaths or serious injuries associated with the Eclipse. And in fact, that cephalid migration or cephalid migration deaths were not a part of the plaintiff's defect case or warning case. The plaintiff never argued that the Eclipse filter was a defective because it had a propensity to migrate in the cephalid direction. So, faced with that, the District Court struck a balance three separate times in definitive rulings, refusing to exclude the recovery filter evidence completely and letting in evidence about death as a complication from the device, just stopped short of allowing the cephalid migration death evidence in, the place where the relevance was at a low if it was there at all and the prejudice was the highest. I was interested in looking at the record in the Booker case that this evidence did come in. Yes. Why was that case different? That case was different because it was an earlier generation of the filter where the of course, where there were cephalid migration was an issue. When you say predicate, you mean the last pursuit? Yes. Before. Right. And the judge still in Booker recognized the prejudice of the evidence, thought it could be managed, but when we moved to the Eclipse trial, the judge looked at that again and said not this time. Because you were three devices later, one reason. Yes. Two generations later. Correct. And it wasn't a predicate device and cephalid migration deaths were not an issue. Now, this was an exercise of judgment, pure and simple. It's a reasoned analysis. In fact, there are multiple pages in this record, in this trial from start to finish where the judge analyzed all these issues and made his record-based decision. By the way, you're in this position not of any fault of your own, but on the one hand, you love the judge, and on the other hand, you think he made a big mistake. The prior case stands on its own footing, Your Honors, with its own standard of review. And I understand that. It's a typical problem of being a district judge. You're damned if you do and damned if you don't. So a balanced ruling occurred. There's a disagreement with that exercise of judgment, but it is not under this court's case law an abuse of discretion. We have also followed that with an argument about why the evidence isn't prejudicial, because it never could have been part of the jury's calculus on the product defect or the warning. Can you respond to your friend's argument that, in the briefs at least, that by arguing that the eclipse filter was life-saving, you in effect opened the door to evidence that its predecessor caused the deaths? So the first thing is that that argument was part of Georgia law and Bard's defense of its product under the risk-benefit analysis under Georgia law. So there was no door opening. That was a pertinent part of Bard's case. Equally importantly, the district court looked at that argument repeatedly. It was made after opening statement throughout the trial. You can look at ER 2270-77, ER 2530-37, ER 2616-19, SER 128-32, and 745 in the SER-49. In particular, the last two rulings that the court made were in the context of this very issue. In each instance, again, what we have is an exercise of judgment and discretion, not a question about changing that calculus one bit.  The judge could not see how this argument opened the door, explained why it didn't change the prejudice calculus, and came out with a reasoned set of analyses on why. So we're still back to the same place, even introducing this door opening equation. I don't think the door swung open, but even if it did, it's still a 403 issue at the end of the day. And there's wide latitude, according to the judge on this, and he struck a fair balance that is not an abuse of discretion on the one hand, and can't be converted into prejudicial error on the other. And unless the court has further questions, we'd be prepared to submit. I have just one question. Could you give us a sense, this is one of the many cases that were consolidated in the MDL proceeding, is the particular evidentiary issue here one that's going to come up in a lot of the other cases? I'm not the trial lawyer, but I suspect that it will, because this cephalid migration death is evidence that comes from the recovery filter, was a principal part of the plaintiff's case or arguments, or tried to be, from the three cases that I've looked at and briefed on appeals. So I think the issue is there. It was dealt with in the third appeal that was before this court that is presently on hold. So I suspect it is an issue. That said, the exercise of discretion, of course, here was made on the record in the Jones case, and is fully substantiated by the record in the Jones case, which leaves us without an abuse of discretion. Thank you. Any other questions, Judge Miller? No, thank you. Thank you. We have no more questions. And you have about a minute. Left. Thank you, Your Honor. I'll try to be very brief. As far as quickly, there is no principal distinction between the Booker trial and the Jones trial. The devices had different names, but the only two design changes were a hook to allow retrievability in a different fashion, which had no weight on its performance, and electropolishing, which is part of a manufacturing process that had little to no effect on its performance. So, again, that distinction just doesn't make any sense here. As far as opening the doors, we talked about filter-saving lives, and the language was not the Eclipse filter saves lives. It was these are great products, they are life-saving. And the particularly egregious example of that, if you read the court's dialogue on the DeFord testimony that was offered into evidence, where we were trying to establish that, you know, look, Bard could have taken this off the market, figured out what was going on, and, again, going back to the reasonableness of choosing this design, and the answer was, well, no, because then we would be creating a danger to the public, all these lives that we're saving with these products. We didn't get to turn that back around and say, okay, well, let's talk about what lives are being taken with this product, and that was specific about the recovery. So it was very misleading. The evidence essentially changed, and Bard capitalized on that. It talked about this litigation bubble, a situation created by trial lawyers and their experts, who were essentially slanting the evidence in their favor. And these are not my words, Your Honor. Your Honors, if you look at EOR 2461, it talked about an artificial world, where evidence becomes slanted, where paid experts try to change or alter the evidence to fit the theory of an attorney who's hired him. Well, that happened, but it happened because of this ruling, not because of plaintiffs. But what the jury was left with is that these plaintiffs' trial lawyers come in there and present a fake case on there. Thank you, counsel. I think we understand your position, and you have exceeded your allotted time. Thank you, Your Honor. Thank you. We appreciate the helpful arguments from both counsel. The case is submitted, and we will be in recess for this morning's session.
judges: Graber, Hurwitz, Miller